UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| DENORAH REYNOSO,<br>    Plaintiff,<br><br>v.<br><br>KYLE ENDRES, alias; RALEEK BYFIELD, alias; WILLIAM SHERRILL, alias; ANTHONY MOORE, alias; JOHN DOES 1-5, individually and in their official capacity as Providence Police Officers; and CITY OF PROVIDENCE, by and through its Treasurer, James Lombardi, III,<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. 22-cv-044-JJM-PAS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

This case involves an alleged noise complaint that led to the arrest of Plaintiff Denorah Reynoso at her home. The central issues involve whether: (1) Providence Police Officers Kyle Endres, Raleek Byfield, William Sherrill, and Anthony Moore ("Defendant Officers") had probable cause to justify warrantless entry into the home, (2) Defendant Officers had probable cause to arrest Ms. Reynoso, and (3) qualified immunity applies to any of the claims. Ms. Reynoso also sued the City of Providence for failing to adequately train, supervise, hire, and/or discipline Defendant Officers. Before the Court are three motions: (1) Ms. Reynoso's Motion for Partial Summary Judgment as it relates to the Defendant Officers on Counts V, VII, VIII, IX; (2) Defendant Officers' Cross Motion for Summary Judgment on all counts; and (3) the

City of Providence's Cross Motion for Summary Judgment on Counts II and VI and its Cross Motion for Partial Summary Judgment on all remaining counts.  ECF Nos. 27, 29, 31.

I.  **FACTUAL BACKGROUND**

Ms. Reynoso resided on the first floor of 102 Wesleyan Avenue in Providence, Rhode Island.  For the better part of her tenancy, another tenant resided on the second floor and a third tenant resided in the basement.  At about 4:00 a.m. on a Sunday morning, the Providence Police Department received an anonymous call complaining of loud music at 102 Wesleyan Avenue.  Earlier that morning, police had received two calls for similar disturbances in the area.  Two of the responding officers were familiar with that residence as an after-party location and the subject of past noise complaints.

About six months earlier, the Providence Police Department affixed the home with an "orange sticker" under Providence Code of Ordinances Ch. 16, Art. I, Sec. 16-21[1] as a result of continued nuisance activity.  That nuisance activity included six

---

[1] Providence Code of Ordinances Ch. 16 Art. I Sec. 16-21 provides that:

It shall be a public nuisance to conduct a gathering of five (5) or more persons on any private property in a manner which constitutes a substantial disturbance of the quiet enjoyment of private or public property in a significant segment of a neighborhood, as a result of conduct constituting a violation of law.  Illustrative of such unlawful conduct are excessive noise or traffic, obstruction of public streets by crowds or vehicles, illegal parking, public drunkenness, public urination, the service of alcohol to minors, fights, disturbances of the peace, and litter.

logged incidents of loud-noise complaints, public drinking, fighting, and one instance of a fired gun shot. The "orange sticker" notice included a $500 penalty for any further nuisance violations during the next six months. Ms. Reynoso maintains that the basement tenant, who had since moved out, was responsible for those prior parties.

The entire 102 Wesleyan Avenue property is surrounded by a fence and, to access the front door, an entrant must pass through the locked driveway gate and walk up a set of steps that leads to a porch. Past the front door is a small common area, to the left is a stairway leading to the second floor, and straight ahead is a door that leads to Ms. Reynoso's apartment. The basement tenant does not enter through the front door but accesses the apartment through a door at the rear of the home. Body-worn camera ("BWC") footage showed that, on the night of the incident, the windowless basement was arranged like a nightclub with strobe and decorative lighting, designated areas for drinking and for smoking hookah, and restrooms marked with gender signage.

When Defendant Officers arrived at the locked front gate of the home, Officer Endres and one other officer climbed over the railing next to the porch while two officers walked in through the driveway from the rear of the property. Ms. Reynoso

---

Additionally, the ordinance lists those who are to be liable "[e]very time that the police department is required to respond to a gathering constituting a public nuisance on the premises within six (6) months of the posting…" Among that list is "[t]he person or persons who organized or sponsored such gathering."

was then seen standing in the front entranceway with half her body leaning outside to speak to officers. She admitted a party was happening and offered to turn the music down, but she did not offer to shut the party down completely. When Officer Endres inquired into the number of exits in the basement, Ms. Reynoso told him there were two. Officers told Ms. Reynoso to end the party several times and then warned that she would be issued a summons if she failed to do so. She also refused to provide identification when officers requested it. She then attempted to end the conversation and close the door before Officer Endres warned her that she would go to jail for obstruction.

Before Ms. Reynoso was able to close the door, Officers Byfield and Endres entered the residence and arrested her in the common area. The officers asked her to retrieve the key to the driveway gate, but she refused, prompting them to wait for the Fire Department to arrive and cut the lock. Ms. Reynoso was charged with obstructing an officer in the execution of duty, R.I. Gen. Laws § 11-32-1, and resisting arrest, R.I. Gen. Laws § 12-7-10. The City dismissed the criminal charges against her.

## II.   STANDARD OF REVIEW

The legal standard is well-settled: the Court must grant summary judgment if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine

issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  A fact is "material" if it might affect the outcome of the suit; a dispute is "genuine" if a reasonable jury could find for the non-moving party. *Id.* at 248.  A party must also be entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  When making a summary judgment determination, the Court must review the entire record and consider the facts and inferences in the light most favorable to the non-moving party. *Cont'l Cas. Co. v. Canadian Univ. Ins.*, 924 F.2d 370, 373 (1st Cir. 1991).

Summary judgment is a "drastic remedy" because it deprives the parties of their Seventh Amendment right to have their case tried by a jury. *Colman v. Faucher*, 128 F. Supp. 3d 487, 490 (D.R.I. 2015).  It also serves as an important check on the parties: the nonmovant may not rely on "conclusory allegations, improbable inferences, acrimonious invective, or rank speculation," but must produce "specific facts" to support their claims or defenses. *Theidon v. Harvard Univ.*, 948 F.3d 477, 494 (1st Cir. 2020) (citations and internal quotation marks omitted).

## III.  DISCUSSION

Ms. Reynoso argues that Defendant Officers unjustifiably entered her home and its curtilage,[2] and arrested her without probable cause, thus infringing on her

---

[2] "The curtilage is the area immediately surrounding and associated with the home, and it is part of the home itself for Fourth Amendment purposes.  This area around the home is intimately linked to the home, both physically and psychologically, and is where privacy expectations are most heightened." *United States v. Bain*, 874 F.3d 1, 12 (1st Cir. 2017) (citations and quotation marks removed).

5

Fourth Amendment rights. Defendant Officers counter that her doorway was a common area that generally permits warrantless entry and that a noise complaint, history of nuisances, and their observations upon arrival at the home amounted to probable cause. Even if the arrest was without probable cause, Defendants Officers argue they are entitled to qualified immunity. The City of Providence also argues that Ms. Reynoso has provided no evidence of a city custom, policy, or practice of failing to adequately supervise, hire, or discipline its officers.

### A. Ms. Reynoso's Motion for Partial Summary Judgment and Defendant Officers' Cross Motion for Summary Judgment

Ms. Reynoso asserts nine counts against Defendant Officers: (1) excessive force (42 U.S.C. § 1983 and state constitution—Counts I and II); (2) battery (state common law—Count III); (3) assault (state common law—Count IV); (4) unlawful search and seizure, false arrest, and false imprisonment (42 U.S.C. § 1983 and state constitution—Counts V and VI); (5) false imprisonment (state common law—Count VII); and (6) malicious prosecution (42 U.S.C. § 1983 and state common law—Counts VIII and IX). The Court will address the cross motions on each count in turn.

#### 1. Count V: Unlawful Search and Seizure, False Arrest, and False Imprisonment § 1983 and Count VII: Common-Law False Imprisonment

Both Defendant Officers and Ms. Reynoso move for summary judgment on Counts V and VII. Much of this case hinges on whether (1) Defendant Officers had probable cause that criminal activity was afoot to justify a warrantless entry into the home, and (2) Defendant Officers had probable cause to arrest Ms. Reynoso. The Court will examine these legal concepts first.

### a. Entering the Premises

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. Among these Fourth Amendment protections is "the right of a [person] to retreat into [their] own home and there be free from unreasonable governmental intrusion." *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)). Ms. Reynoso argues that Defendant Officers violated her Fourth Amendment rights when they entered the curtilage of her property without a warrant or probable cause and exigency. Defendant Officers counter that this claim is not defined by curtilage cases but by *United States v. Santana* because Ms. Reynoso was in a "public space" on the porch of the home, talking to the officers before they even entered the property.

"[T]he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own house or office, is not a subject of Fourth Amendment protection." *Katz v. United States*, 389 U.S. 347, 351 (1967). In *Santana*, the individual was standing in her doorway when police arrived having probable cause to believe that she was holding a bag of drug money. The Supreme Court held that police did not violate the Fourth Amendment because "[s]he was not in an area where she had any expectation of privacy" and "was not merely visible to the public but was as exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house." *United States v. Santana*, 427 U.S. 38, 42 (1976) (citing *Hester v. United States*, 265 U.S. 57, 59 (1924)).

7

Here, Defendant Officers did not summon Ms. Reynoso to the porch. Before any Defendant Officer got to the porch, Ms. Reynoso appeared in the threshold and began addressing the officers. She appeared there, in a public area, exposed to the sidewalk and public street immediately adjacent to the porch. When the police told her they were at the property because of noise complaints, she immediately suggested she had some level of control over the premises and the party, the level of music and the knowledge of illegally parked vehicles, all of which can contribute to a nuisance. Ms. Reynoso concedes that the exchange with police where she refused to disburse her guests or give her identification was a "voluntary interaction." ECF No. 27-1 at 3.

It is noteworthy, however, that *Santana* presumed that the officers had probable cause when they entered the property. Similarly here, Defendant Officers argue that, before speaking with Ms. Reynoso, there was ample probable cause of criminal activity that allowed them to enter the property without a warrant: (1) police received three calls that night complaining of noise in that area and at that home, (2) the home was affixed with an "orange sticker" notice, (3) they heard bass thumping when they arrived, (4) police were familiar with that address as an after-hours club, (5) multiple cars were illegally parked on the street, and (6) Defendant Officers observed Ms. Reynoso locking and unlocking the gate for guests as they arrived.

Ms. Reynoso generally does not dispute these facts, but she contends that none of these actions amount to *criminal* activity, and thus Defendant Officers lacked the requisite probable cause. In response, Defendant Officers also cite Rhode Island General Laws § 11-30-8, which vests authority in police to "enter any house or

building" in which "they have reasonable cause to believe a common nuisance is kept or maintained."[3] The penalty for "keeping or maintaining" a nuisance under § 11-30-1 is a fine of no more than $500 and a term of imprisonment from thirty days to three years. R.I. Gen. Laws § 11-30-3. The law itself and the penalties associated are evidence pointing to the criminalization of such activity—thus, because police had probable cause to believe a nuisance was occurring in the home, they had probable cause to believe criminal activity was afoot. Thus, the Court finds that the Defendant Officers did not violate the Fourth Amendment when it entered her property.

### b. Entering the Home

Next at issue is Defendant Officers' decision to enter Ms. Reynoso's home. Without a warrant, officers need both probable cause and sufficient exigent circumstances to do so. Defendant Officers confirmed during their discussion with Ms. Reynoso at the front door where she did not deny that she was holding a party in the basement, and she also admitted that approximately forty guests were there. Providence Police was familiar with the address and the basement apartment as an illegal after-hours party location and they knew that the basement had only one exit, but when officers inquired about the number of exits, Ms. Reynoso told them there

---

[3] Nuisance (or common nuisance) is defined under R.I. Gen. Laws § 11-30-1(1) as:
> any place as defined in this section in or upon which lewdness, assignation, or prostitution is conducted, permitted, continued, or exists, and the personal property used in conducting or maintaining any place for that purpose, and all buildings, places, or tenements used as houses of ill fame, for illegal gaming, or where intemperate, idle, dissolute, noisy, or disorderly persons are in the habit of resorting.

were two. This added safety concern coupled with the information known before entry—the orange sticker, noise level, illegally parked cars, and the known nature of the location—was sufficient probable cause for Defendant Officers to conclude that Ms. Reynoso was maintaining a nuisance in the home, which amounted to criminal activity.

Moving to exigency, Defendant Officers argue that exigent circumstances were present when Ms. Reynoso refused to provide identification and attempted to retreat into the home and close the door. To support this point, they rely on the "hot pursuit" theory that permits officers to enter a premises without a warrant "when they are in hot pursuit of a fleeing suspect." *Kentucky v. King*, 563 U.S. 452, 460 (2011). Ms. Reynoso argues that exigent circumstances were not present here justifying Defendant Officers to enter. The question is whether pursuing a misdemeanant suspect—rather than someone suspected of committing a more serious offense—presents a sufficient exigency to enter a home.

In response, the Defendant Officers assert qualified immunity. The requirements for granting qualified immunity are well-settled. The Court first asks, "'whether the facts that a plaintiff has alleged ... make out a violation of a constitutional right.' If so, we then ask, 'whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct.'" *Haley v. City of Bos.*, 657 F.3d 39, 47 (1st Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). As to the "clearly established" prong, the First Circuit also considers "whether the legal contours of the right in question were sufficiently clear that a

10

reasonable officer would have understood that what he was doing violated that right" and "whether in the particular factual context of the case, a reasonable officer would have understood that his conduct violated the right." *Mlodzinski v. Lewis*, 648 F.3d 24, 32-33 (1st Cir. 2011) (citations omitted).

Ms. Reynoso argues that the United States Supreme Court's recent rule in *Lange v. California* controls here. In that case, the Court held that in the circumstances of that case, "when the officer has time to get a warrant, he must do so—even though the misdemeanant fled." 594 U.S. 295, 313 (2021). Defendant Officers rightfully contend that *Lange* does not govern the qualified immunity analysis here because the incident with Ms. Reynoso occurred in 2019, over two years before *Lange* was decided. They argue that the Supreme Court's holding in *Stanton v. Sims*, 571 U.S. 3 (2013) applies and grants them qualified immunity here.

Although *Lange* declared unconstitutional a warrantless entry based on a fleeing misdemeanant on its facts, the Court looks to the law at the time of the act in analyzing qualified immunity. In *Stanton*, the Supreme Court held that law was not clearly established that a warrantless entry to a home, in hot pursuit of a suspect who an officer has probable cause to arrest for a misdemeanor, violated Fourth Amendment. While the Supreme Court did not "express any view" on whether the officer in that case acted unconstitutionally, it followed the qualified immunity standard that requires the existing precedent placed the constitutional question "beyond debate." *Stanton*, 571 U.S. at 10-11 (quoting *Ashcroft v. al–Kidd*, 563 U.S.

11

731, 741 (2011)). The Court held that the question was not beyond debate and granted qualified immunity to the officer. *Id.* at 11.

The Court finds that, at the time of Defendant Officer's actions in this hot pursuit case, the law in the case of a fleeing misdemeanant was not clearly established. Accordingly, because Ms. Reynoso can be categorized as a "fleeing misdemeanant," which is discussed above, the Defendant Officers are entitled to qualified immunity for entering the home.

### c. Arresting Ms. Reynoso

The Court next considers the circumstances surrounding Ms. Reynoso's arrest. Defendant Officers argue that they had probable cause to arrest her for refusing to identify herself, coinciding with the fact she was walking away from them, attempting to flee the scene. Defendant Officers claim that the "hot pursuit" exigent circumstances were present because she was a fleeing misdemeanant, and that they had probable cause to believe she violated two statutes—R.I. Gen. Laws § 11-32-1 ("Obstructing an officer in the execution of duty") and R.I. Gen. Laws § 11-30-8 ("Entry by police officers of premises—commanding departure of persons found"). As to failing to give her identification, Defendant Officers state that the "orange sticker" ordinance, Providence Code of Ordinances Ch. 16, Art. I, Sec. 16-21, requires officers who are responding to homes affixed with this sticker to determine the person's identity so that the proper person can be cited for the violation.

Under the "orange sticker" ordinance, Ms. Reynoso was already in violation the moment that police responded to the home. Providence Code of Ordinances Ch.

16, Art. I, Sec. 16-21 (finding joint and several liability "[e]very time that the police department is required to respond to a gathering constituting a public nuisance on the premises within six (6) months of the posting of the notice of police intervention"). While the "orange sticker" ordinance itself does not explicitly require police to determine the person's identity, it does place liability on the owner of the property, those in control of the property where the gathering took place, and the person who organized the gathering. So, it was pertinent to their investigation to determine Ms. Reynoso's identity because they had reason to believe she organized the party. She refused to provide her identification to Defendant Officers at the scene.[4] Accordingly, because Defendant Officers reasonably required Ms. Reynoso to provide identification and she failed to do so, she effectively obstructed an officer's execution of duty, and Defendant Officers had sufficient probable cause to arrest her.

Considering the Court's finding of probable cause to enter the home and arrest Ms. Reynoso, along with a lack of a genuine dispute of material fact, the Court GRANTS Defendant Officers' Motion for Summary Judgment as to the unlawful search and seizure, false arrest, and false imprisonment claims under § 1983 (Count V). As to Ms. Reynoso's common-law claim of false imprisonment, the Rhode Island Supreme Court has consistently held that lack of probable cause is a "necessary element" in a false imprisonment claim. *Beaudoin v. Levesque*, 697 A.2d 1065, 1067

---

[4] While they could have asked for her name rather than demanding official identification, that presents a risk that they will receive a false name.

13

(R.I. 1997). Thus, the Court GRANTS summary judgment to the Defendant Officers as to Counts V and VII. The Court DENIES Ms. Reynoso's motion on these Counts.

### 2. Counts II and VI: Rhode Island Constitutional Claims

"The Rhode Island Supreme Court has consistently held that state constitutional provisions do not create a private cause of action without legislative action." *Kurland v. City of Providence*, 711 F. Supp. 3d 57, 76 (D.R.I. 2024) (citing cases). Any desire to change this state law rests with the state courts and legislature not the federal court. As a result, the Court GRANTS Defendant Officers' Cross Motions for Summary Judgment as to Counts II and VI.

### 3. Counts I, III, and VI: Excessive Force § 1983, Common-Law Battery and Assault

The United States Supreme Court has long held that excessive force claims under 42 U.S.C. § 1983 require evaluation under the reasonableness standard of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 396 (1989). "'The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). However, courts should pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985).

.

14

The Court finds that the facts are in dispute on Ms. Reynoso's excessive force claim. There are BWC videos showing the moments before, during, and after Ms. Reynoso's arrest, but at certain parts of the footage the video are dark due to commotion in the unlit and crowded entryway. ECF No. 28-1, Ex. F. While officers were handcuffing her, Ms. Reynoso appears to fall during the arrest, and she can be heard on the BWC video telling an officer at the station that Defendant Officers "threw" her "on the floor." ECF No. 38-1, Ex. KK. Records from Ms. Reynoso's visit to Miriam Hospital after the arrest note a "likely rotator cuff sprain" on her shoulder as well as bruising on the bridge of her nose. ECF No. 39, Ex. LL at 57. These facts show a genuine dispute over the reasonableness of force Defendant Officers used and whether it was commensurate with the circumstances of the arrest. Thus, the Court DENIES Defendant Officers' Motions for Summary Judgment as to Count I. As to Ms. Reynoso's common-law battery (Count III) and assault (Count IV), when an officer is found to have used excessive force, the Court must also uphold any assault and battery claims. *Raiche v. Pietroski*, 623 F.3d 30, 40 (1st Cir. 2010). Because a genuine dispute over whether the Defendant Officers used reasonable force here, the Court DENIES Defendant Officers' Motion for Summary Judgment as to Counts III and IV.

### 4. Count VIII: Malicious Prosecution § 1983 and Count IX: Common-Law Malicious Prosecution

Ms. Reynoso also moves for summary judgment on Counts VIII and IX, asserting that Defendant Officers maliciously prosecuted her in violation of 42 U.S.C. § 1983 and state common law. Along with alleging a lack of probable cause to arrest

her, Ms. Reynoso alleges the following misconduct: the Providence Police District Commander repeated false statements in the police report, including that the music could be heard two hundred (200) feet away and the basement had only one exit; the communication between police and the prosecutor never mentioned that Ms. Reynoso was not involved in the previous after-hours parties at 102 Wesleyan Avenue; the City of Providence knew Ms. Reynoso's and the homeowner's contact information months before her arrest; and police spoke with the homeowner in 2018 who never suggested Ms. Reynoso was involved with the after-hour parties. Defendant Officers cross-move for summary judgment, asserting that the existence of probable cause at the time of her arrest defeats both constitutional and common-law malicious prosecution claims.

While the elements of a constitutional and common-law malicious prosecution claim are not identical, they are similar and should be considered together. *Kurland*, 711 F. Supp. 3d at 74. To establish a claim for malicious prosecution under section 1983, a plaintiff must show that the defendants "(1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Id.* (quoting *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 100-01 (1st Cir. 2013). To establish a malicious prosecution claim under Rhode Island law, a plaintiff must show that defendants "'(1) initiated a criminal proceeding against [her]; (2) with malice; (3) and without probable cause; which (4) terminated in plaintiff's favor.'" *Id.* (quoting *Solitro v. Moffatt*, 523 A.2d 858, 861–62 (R.I. 1987)).

A lack of probable cause is an essential element to a malicious prosecution claim, and its presence at the time of arrest is a complete defense. *Morrissey v. Town of Agawam*, 883 F. Supp. 2d 300, 311-12 (D. Mass. 2012). Accordingly, because the Court has determined that Defendant Officers had probable cause to arrest Ms. Reynoso, her malicious prosecution claim fails. The Court GRANTS Defendant Officers' Motion for Summary Judgment as to Counts VIII and IX. Ms. Reynoso's motion on these same claims fail and her motion is DENIED.

### B. The City of Providence's Cross Motion for Summary Judgment and Partial Summary Judgment

Ms. Reynoso also sues the City of Providence for Defendant Officers' alleged violations, alleging that "[t]he City of Providence, through its training, supervision, and disciplinary regime caused the unconstitutional behavior by its individual police officers during their encounter with Ms. Reynoso…". ECF No. 1 ¶¶ 85, 90. She did not move for summary judgment as to her claims against the City, but the City moves for partial summary judgment on Counts I, III, IV, V, VII, VII, and IX as to the alleged failure to supervise and discipline aspect of these counts, but it did not move on the failure to train. The City also moves for summary judgment as to the Rhode Island Constitutional Claims—Counts II and VI. In light of this Court's previous ruling with respect to these two claims, they are dismissed as to the City as well. Additionally, because the Count granted the Defendant Officers' motion for summary judgment on Counts V, VII, VIII, and IX, none of these claims survive against the City. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). What is left for the Court's consideration is the City's partial motion for summary judgment on Ms. Reynoso's

17

excessive force claim and her common-law assault and battery claims (Counts I, III, IV).

To successfully impose liability on the City, Ms. Reynoso must show that a particular city policy or custom is "responsible for causing the constitutional violation or injury." *Kelley v. LaForce*, 288 F.3d 1, 9 (1st Cir. 2002) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)). Ms. Reynoso's evidentiary response to the City's motion[5] is not enough to support a finding of failed supervision or discipline of Defendant Officers because virtually all her arguments rest on an alleged deficiency in training—an aspect of her case on which neither the City nor Ms. Reynoso have moved for summary judgment. Accordingly, because Ms. Reynoso failed to raise disputed issues of material fact on or to even identify policies that bear on the City's supervision and discipline relative to the events here, the Court GRANTS the City of Providence's motion for summary judgment on Counts I, III, IV as to the supervisory and disciplinary allegations but not the training allegations.

## IV.   CONCLUSION

Ms. Reynoso's Motion for Partial Summary Judgment is DENIED. ECF No. 27. Defendant Officers' Motion for Summary Judgment is GRANTED as to

---

[5] A review of Ms. Reynoso's undisputed facts and attached exhibits—in the context of excessive force, assault, and battery—shows that Defendant Officers' supervisor failed to complete a use of force form, which is required whenever there is an alleged physical injury during an arrest. ECF No. 38 ¶¶ 269-72. At the time this document was prepared, no one in the supervisor's chain of command addressed his failure to fill out this form. *Id.* ¶ 274. Though these inactions appear to deviate from typical city policy, they do not point to an affirmative policy that is directly responsible for any constitutional violation she alleges.

Counts II, V, VI, VII, VIII, and IX and DENIED as to Counts I, III, and IV. ECF No. 29. The City of Providence's Motion for Summary Judgment and Partial Summary Judgment is GRANTED as to Counts I, II, III, IV, V, VI, VII, VIII, and IX (supervisory and disciplinary claims). ECF No. 31. Counts I, III, and IV—excessive force, common-law battery, and common-law assault—survive against Defendant Officers and the City of Providence.

IT IS SO ORDERED.

*s/John J. McConnell, Jr.*

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

May 2, 2025